move to the last argument on the calendar for this morning that's Red Hook Container Terminal versus South Pacific Shipping. Mr. Keough are you on the line? Mr. Keough? Yes your honor. There you are okay good you can see and hear all right. I can thank you. Okay and Mr. Page can you see and hear us? Yes your honor good morning. All right so Mr. Keough you've reserved three minutes of rebuttal so that gives you seven minutes out of the gate. We'll begin with you. Thank you your honor. May it please the court my name is John Keough counsel for Red Hook Container Terminal. This action arises from South Pacific Shipping's material breach of a maritime contract for Steven Doring and Terminal Services the South Pacific's vessels for a weekly service at Red Hook's terminal in the Port of New York in late 2013. Now the district court properly found that South Pacific materially breached the party's contract and granted recovery for unpaid invoices and and also denied South Pacific's claims for a breach of contract but the district court erred in three key respects. First in allowing the conversion claim the district court ignored its own multiple findings that South Pacific's conversion claim arose from the same facts as the breach of contract. Is there a law counsel is there law that they are mutually exclusive that they can't come from both? Yes your honor the law in New York is clear a conversion claim cannot be predicated on a breach of contract claim there must be. No no I don't mean it's predicated on the claim I mean it's predicated on the same facts that the facts result in a breach of contract and they also result in a conversion. I'm saying is it not possible for the the South I'm sorry from your client for a Red Hook I'm trying to remember which section of Brooklyn I got it isn't it possible for Red Hook to have behaved in respect to this equipment in a way that a breach the contract and also be constituted conversion or are they mutually exclusive that's the mutual mutually exclusive unless there's some independent wrong some independent tort that occurs that or some independent breach of duty I should say that occurs and under New York law unless there's some independent duty and there's not on this record there cannot be a conversion claim stated when there's a mere breach of contract claim stated. Does the conversion claim rely on the breach of contract? If there were no contract between SPS and Red Hook wouldn't they still be able to make the same allegations of conversion that you held their property and you wouldn't release it until they paid fees? Well if there were no contract we wouldn't even be here your honor but if there were but here you have a contract that the district court found was was breached by South Pacific and that excused the further performance by Red Hook. Right but it didn't entitle you to self-help and seize their property right so they breached the contract you're entitled to recover the damages but you're not entitled under the contract to seize their property right? We're entitled not to work further according to the district courts finding and and conclusions of law the material breached excused any further performance by Red Hook to do anything. Right so then South Pacific gets its equipment back you have a cause of action against them and they get to use that equipment to either generate funds that they can then use to pay you or they can give it back to the leaseholder so they are at least not paying money on on that equipment but I get to seize it and that's what the conversion claim is you illegally seized it after they breached the contract. We did not illegally seize it your honor in fact what we were what we did was as the court excuses we did no further work we were not obliged to work the only source of our obligation of Red Hook's obligation was under the contract to move equipment on and off the facility the equipment was only there because of the contract. But they asked for a tax. Did they not ask for a tax? Excuse me? Did they not ask for the equipment back? After the terminal hold they asked for the equipment back. And you refused. And they said we're not going to do any work until we get paid and the tariff kicked in by that time South Pacific according to the district courts findings had materially breached the contract. I'm sorry I thought that your argument was that you put a terminal hold in fact you just used the terminal hold which is authorized under the tariff if somebody doesn't pay fees you can withhold the equipment now you're saying it was just a matter of you didn't want to put in the work to return it I mean is aren't you actually saying we're not going to release the equipment until you pay us the fees that we are we believed rightfully or wrongly that were owed. It's false your honor it's as a district court found their breach excused us from any further performance and the only performance that we would be doing was be moving the equipment it doesn't they don't just come on and take their equipment the equipment has to be moved by union labor has to be prepared for delivery that's what they were asking the tariff kicks in and this is a federally approved tariff that specifically authorizes a terminal hold so the by the key dates here your honor November 3rd their ship stopped coming November 20 November 6 Red Hook says we're not going to work anymore unless we get paid there's a terminal hold November 22nd is when Ed Hickey of South Pacific tells Red Hook we have no money we have no ships we're done according to the district court the material breach had occurred and by December 11th the terminal hold we say it occurred so the tariff maybe does authorize you to put a terminal hold until they pay their fees but you also use the tariff to retroactively charge higher rates for demerge for the equipment even during a period in which the agreement was in effect and you say you're also going to extend the terminal hold until they pay attorneys fees and it doesn't seem like there's a provision for that in the tariff so are you asking for more fees that are authorized by the tariff even if you were operating under the tariff no you're under the this FMC approved tariff specifies how you calculate demerge charges for empty containers Red Hook has no choice in the matter the tariff applies as soon as there is a material breach it applies specifically when there is a discontinuance of service as here and in so the tariff dictate how those charges are calculated Red Hook followed the tariff Red Hook did exactly what the tariff directed it to do isn't there some question as to whether I'm sorry go ahead yeah just a short problem I mean aren't you also applying the tariff rates for demerge to periods in which it's undisputed that the agreement was in place which would have been a lower rate of demerge fees the the tariff according to the tariff your honor you from from when the equipment comes on the terminal that's the trigger date there's a free time and then the and then the tariff kicks in and it does go back in time that's the way the tariff is written that's the way the Federal Maritime Commission approved it for the New York Terminal Conference that's not Red Hook's decision Red Hook was lawfully following the federally imposed tariff and how it calculated those matters the tariff was the tariff I'm effect between the two or there's the tariff in effect only if there is no contract complete contract between the two parties we say the tariff was in effect in any event but that it definitely was in effect following the material bleed breach and certainly according to the district court's finding by the time of the terminal hold the the tariff applies if there is a country the tariff does not apply if there's a contract covering the same services our position has been a number of these services that were charged such as long-term storage were not covered in the contract because it was a contract for a weekly service containers the equipment were never kept on the on the terminal for more than about seven days long-term storage is specifically spelled for in the tariff but in any event there's no doubt that the contract by the material breach of South Pacific ended we say certainly by November 22nd when they said we're done so the tariff is applying what I was trying to get at so even if I were to agree with you that once there's a termination the tariff kicks in because there's no agreement in place the thing I was getting at was if you're still charging to merge fees at the tariff rate even for periods before the termination and I guess you just made two arguments I think you said the tariff by its terms applies retroactively but then you also said that the agreement didn't have a provision for long-term storage and so maybe your argument is that there was no agreement about long-term storage so then the tariff applies that is one of those two things your argument yeah there it's a it's a two-pronged argument your honor the district court found that the tariff did not apply as a gap filler respectfully we disagree and we believe that the tariff does apply as a gap filler because the the rules that say that it apply or the regulation says it only doesn't apply if there's a contract covering the same services and we say that the contract didn't cover long-term storage for empty containers but regardless once there was a material breach the contract that means that the terminal and the shipper can have an agreement between the parties but as long as it's silent on some subject the tariff can kick in to provide terms of that kind of service yes that's exactly right your honor and in fact that for certain customers other than South Pacific where there are services not covered by the rate schedule agreement of course the tariff does apply this is not these contracts don't cover every single service that's given in this case it was a liner service the ships would come in every week and leave the containers would move through the terminal and come back out the tariff here protects the terminal operator that when that ship stops coming there's a way for the terminal operator to get paid and and the ship sails off you have a recalcitrant ocean carrier like we do and at least the terminal tariff protects the terminal operator addendum H just before I know that you're a little over time but addendum H which provides for the fees so your position is that that's a termination fee I guess I have a couple questions one is what is the penalty for failure to renew for the lots of damages for what you say is SPS's breach that are far in excess of 80,000 or 40,000 dollars so these this schedule of penalties for failure to renew it's not compensating you for lost business what's it what's it doing it's it it's intended it's intended to compensate the terminal where there's a there's termination short of the of the agreed period and and the short answer to this is that it was a termination fee not a renewal fee because the intent of South Pacific matches exactly the intent of Red Hook in South Pacific's answer which had can be found at a 31 in the record paragraph 24 South Pacific calls this a termination fee they agree it's for $80,000 they agree it's in a year for the way these facts play out why should it be $80,000 so if it says 90 days prior to expiration by either party if one exercise of the option not to renew then you get this amount for failing to renew so why isn't it $40,000 because there's a termination in year four which means there's a failure to renew for a year five if it's a termination fee why would it say well your honor the parties probably could have used better language but it was clear as I indicated that they both certainly understood that this was a termination fee South Pacific called it a termination fee in April of 2015 it was only at the time of trial did they start to change the language that they use and start to characterize it as a termination fee what would it even mean then to terminate in year five so if two weeks before the end of the contract and you know September 2015 if somebody somebody terminates you still get $40,000 that's that's what they agreed on your honor that's what they that's that's what they agreed and was it possible is it possible that they were looking forward to the fact that there might be a sixth year and it was to provide for the sixth the year in case there was one that's that's possibly your honor but that's not in the record in there and and that was still a long way off I understand that that Red Hook took over the terminal in December 2011 is that right I believe that's correct your honor yes a contract between Red Hook and SPS it says year one begins January 2011 so so what what does that even even mean so it was not with Red Hook as a counterparty in year one is that right there there was it was American steve adoring I think was the prior party that was operating the terminal but the term the contract before this app of this current contract changed dramatically there was no addendum like addendum H in the prior time no I understand right I looked at the contract with American steve adoring it doesn't have addendum H it has some other you know very different provision but addendum H runs from January 2011 even though Red Hook was not in charge of the terminal at that point so what would it even mean to terminate in year one why would Red Hook be entitled to fees if Red Hook is not running the terminal I guess I just want a little bit of content as to how to understand addendum H you signed it before Red Hook took over the terminal and it covers periods also or Red Hook took over the terminal it was signed and then Red Hook took over the terminal and the years relevant here in this most recent iteration or that in this particular contract are shown in addendum H what the operative operative years of the contract are do you know do you know when it was signed because the version we have does not have signatures or a date on it I I don't believe the contract was ever fully signed it was never fully executed but is there a way there's nothing in the record that indicates when it was agreed to does that might help me understand this question about termination versus right to renew because one other question is what does it mean not to renew in year one because obviously you can't have a non renewal in year one I understand that that's confusing but because I don't actually know when it was signed I don't know maybe there was some period between signature and the commencement of year one and so maybe that would make sense but you're telling me you don't actually know when it was signed well it was you know it was you don't even know when it was agreed to or when they when it entered into force just it begins on the dates listed in addendum addendum H and that's when they started and in context in context it may be meaningless in other words in context it may be in we're guessing at what it means because of the inconsistencies inherent with respect your honor we're not guessing what it means because the parties agreed as I say in the in the answer in April 2015 South Pacific agreed exactly as Red Hook says it was a termination fee it occurred this time in year four and it's $80,000 they just said they should get my answer you mean answer to the complaint and I'm sorry answer to the complaint which is found at a 31 and it's paragraph 24 they also indicated that it cannot be relevant to a prior year than year one because they admit in the proposed findings of fact number 97 which is in the docket that this applies to the next contract year not to a prior contract year so it could not as a district court said well year one may be applied to a prior contract year renewal oh let's let's stop there you reserve some time for rebuttal three minutes so we're here for mr. page thank you you're you're you're muted you're muted there we go got it good morning your apologize Dan page for South Pacific and Ecuadorian line I just to get to judgment on she's question the first iteration of the contract before the parties was is found at beginning at appendix 403 and on the second page 404 there's a at the bottom in the footer the date that that contract is printed or there's a date on it of December 1st 2011 we know we know that from the joint statement of agreed facts which is at the in the docket it's 70-1 number 19 on page 3 on September 26 2011 Red Hook became the operator of the terminal so they could as mr. Teo said that if the agreement took effect in January 2011 it couldn't have they were not right so I guess that's my question so what do I make of this year one going from January 2011 if the agreement couldn't have taken effect until December 2011 well I think I think that the district court had a reasonable explanation in that a aside the previous operator you mentioned that you saw the agreement between ASI and South Pacific that addendum each says that the contract ends in December at the end of December 2010 so now you have this period of December January 1st 2011 to September 26 2011 where ASI is running the terminal so it's perfectly reasonable to guess that there was some remnant of the old ASI agreement they just wrote a contract to cover just to cover all periods even if it was a period in which ASI was still running I think that's a reasonable explanation didn't come out in the trial and it didn't come out before trial right the the fact that ASI was operating the that it may have been a remnant was in our post trial briefing I mean the explanation that you've just offered which you described as I guess that that wasn't made that maybe like there could have been testimony about that but there wasn't right there wasn't because year one was not an issue here we're trying to explain year four and year five and but they're disputed terms that the non-renewal in year one when you really can't not renew a year one in a contract typically right right I agree it's hard to square but if you look at the plain language of the agreement you have an option not to renew that has to be exercised 90 days prior it's not a turn it doesn't say termination fee and as the evidence developed on this your view is what that that in the 90 days before each year you exercise the option to renew or not renew and if you don't you pay the other party the amount that's listed for the following year you're going to not to renew so that would mean that if somebody decides not to renew in year four they pay $40,000 that's that they pay the year five penalty correct what what's your view of what the year one thing means then putting aside these evidentiary questions I understand that there might be a question about that but just looking at the contract and based on our discussion what do you think it would mean like what under what circumstances would somebody pay the $200,000 for year one if I I don't know there's not evidence as you said but there is a possibility that in the lead-up to the contract taking effect there may have been a lag well there was a lag in September 26 2011 before Red that may have been to cover that that would be a that would be to not renew for year two right well if to not renew for year one you would have to it would have to be the 90 days before January renew would be a bad term in that situation but it could be if South Pacific backed out before initiating the contract before initiating the service and didn't continue from ASI and I there's no record evidence about this either and so maybe it's just a mystery but year two is breaking up broken up into three periods under the schedule are those three different 90 day periods in which you could renew over the course of year two we have no evidence but it would be if you consistent on that particular year but if you're consistent with the lane of the plain language any 90-day period prior to the expiration of year you just have more more decision points at which you could decide to renew or not renew you're saying is just it's just we shouldn't read into that and it should just be renew or not renew for year two if you shouldn't you should ignore the extra period if you're in year one it's either renew or not renew for year two if you're in year two I would say the expiration of the question since words said that it was not doing any more business at the terminal and rerouted all its ships to Antwerp and so on and the district court said that that was not a termination but why why shouldn't that be a termination if you're clearly telling the terminal you're not doing any more business with them why isn't that why isn't that a clear indication of your intent to terminate well it's a material the district court said it was a material breach and there's a if there's a material breach on a service contract the counterparty has to has the obligation as the option to either terminate or not and at this point in this case so are you saying that after you did that breach you were still in a position to continue performing under the contract so you rerouted all of your ships to Antwerp and you said you weren't doing any more business at the terminal how could you possibly have been in a position to but so if if under your theory Red Hook had said well we opt not to terminate we want to continue the contract would you have sent more ships we could have they could have sent more ships the agreement was renewed for all of year four the the testimony was Red Hook's testimony it was that South Pacific said this they South Pacific did not send us in in reality didn't send any more ships in but they had an agreement there was no minimum service call they had renewed the agreement by not for year four by not exercising the option not to renew and the agreement was in place there was no provision in the contract for termination by conduct by not sending ships there was no requirement for a SPS decided not to renew for year five but you were performing the contract for year four is that right we didn't we SPS never decided not to renew the contract oh I thought that's what you just said you said no Red Hook terminated the contract by its issuance of the yeah so the district court says that so you say you're not sending any more ships to the terminal and then Red Hook responds by saying well we think we've terminated and therefore you should pay us a and the district court says that that is itself a termination but doesn't that just on its face reflect Red Hook's understanding they thought that SPS had terminated if SPS had not terminated why didn't you respond to that by saying well we never really wanted to terminate well SPS had three had the district courts of that SPS had breached at that point and it was in the face of the breach that Red Hook had the obligation to either terminate or not and Red Hook was still issuing invoices under the agreement there was still activity under the agreement going through November maybe even early December and there it was a rate it's a rate agreement so what it does is lock in rates for the discounted rates for the terminal use so if there's no requirement for a weekly service in the agreement but didn't the district court find that there was a requirement to be serviced in the district court say the contract wouldn't make any sense if there was no requirement the district court did say that the I do dispute that there's nothing that required it the only what she cited to that the judge cited to was that there is provision that there would be a birth available that means if our ship comes in we'll make sure you have a birth it doesn't mean if you know ships not coming and we won't use the birth for someone else it's not you know it's it's not the exclusion of all the callers unless your ships coming so if the agreement had no entailed no obligation to do any kind of level of service what does it even mean not to renew it if it's just keeping rates in place if anybody happens to want to do business at a particular time well I that's an important that's an important piece if you look at the demerge rates in the agreement for empty containers it's two thirty two thousand thirty three cents a day versus 40 I think was 40 something dollars a day so multi no I'm sorry 90 something dollars a day so it was a an incentive for us to use their terminal and while we had a weekly service if we could provide that service they would give us a discounted rate it there's no testimony on that I'm just surmising but it does make sense that you would have the ability of a terminal that you could come to when you wanted and you and take advantage of the rates but it doesn't create an obligation to have a weekly service and in fact there were weeks when the vessels didn't call you just said a moment ago that you conceded that SPS had breached the agreement by saying you're not going to do any more business with red hook but now you're saying that there wasn't an obligation to do any business so why was that even a breach no I didn't consider that the district court said that there wasn't even a I don't think so but it doesn't trigger the I think that if there was a breach it was non-payment and but in this case and that this isn't the record that red hook was accepting intermittent payments and continuing to service the vessel so that's why in in on each instance they did that it was this district court pointed out it renewed their obligation to call the material breach out as and terminate the agreement otherwise they just keep renewing that that requirement I'd like to get the tariff in conversion if we could yeah so something that mr. Keogh just said is that he thinks that the tariff was applicable at the same time that the contract was that it said it because it wasn't live that the the services covered by the contract did not include all the types of services that are covered by the town okay your response to that so that the tariff says in four places in the in the agreement section of the tariff it says in four places that it only applies in the absence of an individually negotiated agreement says it in in the title and parentheses it says it in part one the purpose when a separate written agreement the carrier operating vessel does not exist be where no written agreement exists three and rules terms and conditions where no fully executed agreement exists this idea that they could go back and charge for services that were provided under the agreement using tariff rates that under everyone admits we're not in effect until ever well they don't admit ever but the idea they can go back and back charge under tariff rates is ridiculous the demerge was a service covered by the by the agreement this idea that the demerge section somehow separates out short term and long term demerge is a complete completely made up there's no language in the agreement that talks about long term or short term and demerge your position your position is that the tariff is irrelevant to the to what we're talking about absolutely the tariff you're saying the tariff can't fill in terms that are absent in individually negotiated agreement as long as there's such a thing in place but once there's a agreement in place why doesn't the tariff kick in at that point the tariff has no the tariff says that if the agreement has lapsed or is otherwise not applicable for any reason including discontinuation of service that that's that if the agreement in itself has those terms says the agreement will lapse if X Y & Z happens the tariff can't force the agreement to lapse termination if the district court said if you had say you had say we call the addendum age liquidated damages provision what happens then on the moment of we have a contract that defines the terms and the idea of the shipping act and the regulations is that the parties can contract around the tariff I'm agreeing I mean just for the purpose of this question I'm agreeing with you that for a period of time in which the agreement is in place you should look to the agreement but I guess my thought is the following so if in fact it was a termination Red Hook says it was by you and you say it was by them but in any there's a termination and then there's a question as to whether there's the authority to do a terminal hold or whatever that happens subsequent to the termination why shouldn't we look at that point to the tariff because at that point it's undisputed that the agreement between SPS and Red Hook has been terminated and is no longer in effect because the the tariff applies to unpaid invoices issued under the tariff that might give you some relief under the tariff if you the tariff itself says this defines rules and conditions applicable to circumstances where the terminal shall steve it or a vessel and store and release cargo so it's services performed under the tariff demerge is storage the merge was going on so if in fact there were services that were provided after the termination I think you're acknowledging that maybe the tariff would apply but if what they're doing is trying to recover fees for services that were performed during the period in which the agreement was in place you can't look to the tariff for additional authorities to recover those fees you have to use whatever self-help measures were authorized under the agreement is that right I believe that that that's right how could if they said you've got equipment here and you better pick it up and you said your client said no we're not going to pick it up you would agree then that the tariff would justify them charging you for hanging on to that equipment that you'd left at the terminal if we had agreed rates for agreement is now term right if the agreement is terminated under the terms of the contract and they said you got stuff here get rid of it and you don't come you're saying that they still have to charge you under the contract they don't then revert to the town well if the if the agreement is terminated that there may be I wouldn't I would be careful because if the operator wanted to use that to their advantage they would just terminate and they you may they would use that as a vehicle to flip to the tariff well I mean it ended be a breach if they did it improperly but there's no question here that the character that the contract was terminated right that we believe that Red Hook terminated the contract but there were no all the services prior to the the termination were performed under the agreement there were no services performed after the termination the only thing they invoice for after termination was demerge and the only reason the demerge could possibly have even been conceivably incurred after the termination is because they held the equipment so that's like that's my question so you want you asked for the equipment back at some point right yes when in relation to the termination by the the hold was December 11th the notice of the termination quote-unquote termination fee was December 13th and the letter was December 18th I'm sorry 18 so under that timetable there was no time for the tariff to even kick in right that's all right they issued invoices that had a 20 and 30 day payment term so we weren't even in breach of anything issued on December 13th arguably until January okay so we're going way over but we damages for the conversion and I guess I want to I want to get to that because it seems to me conversion generally the damages are you get the value of the thing converted or you get the thing back you're asking for the value of the things taken plus the expenses that you would that you incurred on this that's good but why do you get both well they're both they're both out of pot we're out of pocket on both so you know in a lease I mean picture a vehicle lease you lease a vehicle you leave your car at a garage the garage unlawfully takes your car won't give it back to you what do you run the hook for to the leasing company the residual value of the car and the remaining payments under the lease agreement so we are out of pocket for their wrongful detention for the value of the equipment which that it could have come in either the form of the equipment itself or the valuation which is fine so that's one category but it's a distinct category of damages that because we have no access to the equipment we cannot reclaim it and return it to the lessors to stop the to stop the per diem charges now there's something is this something that would require further proceedings in the district court to sort out in your view no and not in my view we presented testimony of the amount of damages you know the only question was the amount by the judge we provided testimony as to the amount of the damages we and we provided detailed information on the invoices and the payments the only questions that came up were one whether a third party was paying the invoices on South Pacific's behalf or two and two that there were the invoices covered equipment all over the world so it included both the Red Hook equipment and other equipment the witness provided spreadsheets that broke out all this each invoice was tied to a contract number all the details there there's nothing was contradicted so the the quantum is proven it's the question of how you apply that to the law and to make South Pacific whole on the conversion you have to that you have to look at the two categories of damages the loss of the property and the extra per diem that they were forced to pay because of the detention just just too simple perhaps but if the prop if they were renting the property and paying for how do they get to own eight hundred and fifty thousand dollars worth of that same equipment the equipment has value that has to be did they own I'm just did they own the equipment that had the value of eight hundred fifty thousand dollars no they lease the equipment but the they are obligated to return that equipment to the leasing company so they would get their money at what if they got cash the eight hundred fifty thousand dollars they would have to then pay it to the leasing company correct that and then you're saying it's that plus whatever else it costs them to for the for the equipment which is the lease fees yes yeah in the car case you wouldn't get the value of the car plus the lease fees you get the car back and then the leasing company could could take their car from you and they would get their car back right I mean out of pocket what you pay them a month plus the replacement costs if you replace you're either getting you're either getting the car back or you owe the you always have to return a car at the end of the lease but you didn't get the equipment friends car back I'm sorry but you never got the equipment parents car back correct so you never got to return that to the correct and then you're on the hook for the residual I mean in a car situation might have insurance to hard enough as it is right but the residual value of the of the car plus the the payments are presumably equal to or less than the full value of the car right the the new value of the car yes it's so in that situation the residual value if you're leasing a car you're only paying two years off the value of the car on a four-year lease so there's still a lot of residual value but here you're getting here the district court awarded the value of the equipment at the time of conversion plus nine percent interest right correct right so so that should be the amount of whether it totally covers your lease payments or whatever but you are getting some payments above what it was worth at the time of conversion that would overlap with the lease payments well the lease payments were eight hundred and fifty eight hundred and forty five thousand dollars so it's it's not quite there and and we're entitled I think you know I think you're entitled to interest either way it's not interest to compensate for the value all right let's hear mr. Keogh for three minutes we've gone way over but there was a lot to cover yeah you have to unmute unmute going back to one of mr. questioning on mr. page about material breach the district court found there was a material breach that's not challenged on this appeal and and the district court found findings about the fact of what constituted the material breach by South Pacific it was no payment it was stopping the ships and let's remember again November 3rd the last ship calls at Red Hook November 6 mr. stomata says what's going on I'm not getting paid you owe me money there's another ship coming in this week he didn't know they were sending their ships to Antwerp then they didn't tell him that night mr. Hickey of South Pacific causes principles in Ecuador and says the cats out of the bag the district court found that that testimony that that description by mr. Hickey as he gave it a trial was evasive it was non-credible and they couldn't even be honest with it with the court a trial on that November 22nd again pressed by mr. stomata's they finally say Hickey says we're done there are no more ships we have no more money certainly by then there was a material breach there was termination we'd say the district court found that it could could have gone at least to December 11th when there was another terminal hold in any event and there's termination the district court says those are two different things and there's material breach but then Red Hook could have decided to terminate or to continue so what do you say just in response to that that's what continuation there were no more ships the empty containers were sitting on the terminal when when a ship's coming in on a weekly service Red Hook is hiring labor they've got a plan labor through the ILA they've got a space there they've got a plan the weekly service for these ships in contemplated that the equipment would come on and off every seven or ten days and a ship would come in the empties would go back on the ship and away they'd go and so there was no intermediate servicing there was no continuation by Red Hook they were waiting to find out what's going on and they weren't being told what was going on they were they were being met with a stone wall now as to the tariff the tariff specifically says that it defines the rates and rules to circumstances resulting and this is in at a 471 at section v1a of the FMC tariff resulting from the cessation of transportation services by a user of NYTC's facility cessation may occur for any reason including but not limited to discontinuance of service and so it's very clear that the tariff contemplated exactly this sort of thing happening contract ends unpaid invoices carrier takes off and that's that's that in this case the district court penalized Red Hook for doing exactly the thing that the district court said it was excused from doing not working any further to handle any of this equipment without getting paid the district court said further performance was excused because of the material breached by South Pacific then it turns around and it penalizes South Pacific for not to Red Hook for not doing the exact thing it had been excused from doing well but returning the equipment is not something that they were excused from doing right I mean that that's a different thing that return of equipment is not in the contract right returning the equipment cannot be done without Red Hook performing work your honor the equipment doesn't just magically jump out the gate Red Hook has to hire labor pay the labor direct them arrange for truckers to come in somehow mount these containers pull them off of the stacks wherever they are there's a lot of work none of which Red Hook would have been paid for and which the district court said Red Hook was suspended from having to do that's the contradiction that's the catch-22 that the district courts conclusion by going to this phantom conversion theory that would have been covered by that was really barred by the breach of contract suddenly comes up with a new duty to act the very duty it just excused in its findings based on our years but again the breach of contract you're talking about is the tariff it's not the no no the breach of but there's no terminal hold provision in the contract right no the material breach of contract is there the breach of contract alleged by South Pacific is what duplicates the conversion theory they alleged there was a breach of bailment contract and that the return of the equipment constitutes a breach of contract that exactly mirrors and just dresses up the breach of contract the that's it the conversion just dresses up your argument is I mean you're still recovering when you do the terminal hold you're trying to recover for steve adoring fees that were owed to you under the contract right that's that's correct but then you're saying that you can look to the tariff for the authority to go to to seek different remedies in order to get the fees paid for you so the tariff authorizes you to do the terminal hold but what you're trying to recover our fees that are owed to you under the contract right in addition to the fees that accrued under the tariff the minute that the contract I understand what that happens after you you go to the remedy of imposing a terminal hold no no that's that's exactly the point once this once the breach occurs and the the agreement ends where there's a material breach and the contracts terminated which we say happened at least when South Pacific said we're done nothing more is happening as of November 22nd and certainly by December 11th when the terminal hold was given and that's when the district court believed that brief the termination occurred certainly by then there was no more contract and the tariff kicks in automatically and that provides the remedies of nothing can go out the gate before there's a payment but certainly Red Hook had no obligation to do anything they were excused from any further work given the material breach by South Pacific if I may I realize I'm over my time if I may just speak briefly on the question though supposing supposing the defendants had said okay we'll come in we'll provide the labor we'll provide everything just let us go in and and and and and get the equipment back so we can give it back to the people we rented it from it's that something they were I don't know if they're able but could they have done that no they could not have they they first of all they never even offered to but but they're not allowed because of union labor requirements it probably I believe the testimony a trial was by mr. Stamatis was that would have been illegal in fact Red Hook's not allowed to allow people to come in to the terminal and it would involve hiring ILA labor directing and supervising that labor and the and the equipment moving these containers around so it did offer to pay the stevedoring fees that had accrued under the contract right they just wouldn't pay the attorney's fees and the extra demerge fees or the district court found that didn't the district court found that they offered to pay eight months later they offered to pay the stevedoring fees but they wouldn't pay any of the storage charges that had accrued under the tariff and they said they'd pay but they said they'd pay plenty of times and they never paid anything but they've never offered certainly they could have solved this whole problem in November of 2013 by paying the $300,000 they owed on the stevedoring charges they chose not to do that Red Hook is is not that Red Hook would have agreed to end the terminal hold if they had just paid the stevedoring charges even if they disputed these other ones that's what they that's what they offered that's what we offered to do in the letter replying to mr. pages we said why not pay the letter but then but then the district court says that in fact they offered to do that but then you still insisted that you wouldn't release the terminal hold until the attorneys fees and the and the demerge fees are paid. Eight months later eight months later they offered to pay the stevedoring fees that were overdue and a termination fee of $80,000 but they and they proposed they proposed not Red Hook to pay attorneys fees towards Red Hook but they wouldn't pay a nickel for this for the charges that were accruing under the tariff and they never reached a settlement agreement this was as I said this was in June of 2014 and that's in the record. All right well I think we are way over on everybody but it was interesting and it was in response to questions so thank you both we will reserve decision